UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PAMELA PERERA, as personal representative of the estate of MICHAEL KENNETH PERERA, deceased, and as assignee of Estes Express Lines Corporation,**

    Plaintiff,

v.                                            Case No.: 8:02-CV-688-T-23EAJ

**UNITED STATES FIDELITY AND GUARANTY COMPANY,**

    Defendant.
_____/

### SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the court are **Plaintiff's Supplemental Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment** (Dkt. 93), **Defendant's Supplement to Defendant's Motion for Summary Judgment** (Dkt. 94), **Plaintiff's Response to Defendant's Supplement to Defendant's Motion for Summary Judgment** (Dkt. 95), and **Defendant's Response to Plaintiff Supplement to Plaintiff's Motion for Summary Judgment.**[1] (Dkt. 98) Oral argument was held on June 28, 2005.

Plaintiff seeks summary judgment on two of Defendant's affirmative defenses: (1) that the intentional injury exclusion in

---

[1] This matter was referred to the undersigned by the District Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 6.01(b) M.D. Fla. for proceedings, consideration and a Report and Recommendation on the parties' cross motions. (Dkt. 99)

the employer's insurance policy precludes coverage liability and, (2) that Plaintiff's election to accept workers' compensation benefits prohibits Plaintiff from recovering additional damages under a tort theory. (Dkt. 93 at 1-3) Defendant seeks summary judgment on Defendant's affirmative defense of workers' compensation exclusivity. (Dkt. 94 at 1) For the following reasons, I recommend that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Motion for Summary Judgment be **DENIED**.

### I. BACKGROUND

In 2003, both parties filed motions for summary judgment. (Dkts. 34 and 37) The cross motions were referred to the undersigned for consideration and a Report and Recommendation. (Dkt. 68) On August 22, 2003, the undersigned issued a Report and Recommendation recommending (1) denying the parties' cross motions for summary judgment as to the Defendant's affirmative defense of exclusivity of remedies; (2) granting Plaintiff's motion for summary judgment and denying Defendant's motion for summary judgment as to Defendant's affirmative defense of lack of consent, (3) granting Defendant's motion for summary judgment and denying Plaintiff's motion for summary judgment as to Count Two of Plaintiff's complaint based on Defendant's affirmative defense of no excess judgment; and (4) denying as premature the parties' cross motions for summary judgment on Count One and on Defendant's affirmative defense that the intentional injury exclusion precludes coverage. (Dkt. 73)

2

The District Judge adopted the Report and Recommendation of the undersigned. (Dkt. 79) As to the cross motions for summary judgment as to Count One and Defendant's affirmative defense that the intentional injury exclusion precludes coverage liability, the District Judge noted that the United States Court of Appeals for the Eleventh Circuit certified two questions to the Florida Supreme Court that would be dispositive of these issues. (Dkt. 79 at 2); see Travelers Indemnity Co. v. PCR Inc., 326 F.3d 1190 (11th Cir. 2003). Consequently, the District Judge deferred ruling on these issues pending the Florida Supreme Court's decision in Travelers, and directed the clerk to administratively close the file pending the Florida Supreme Court's decision in Travelers. (Dkt. 79 at 2)

On December 9, 2004, the Florida Supreme Court entered a decision in Travelers Indemnity Co. v. PCR Inc., 889 So.2d 779 (Fla. 2004). On January 26, 2005, Plaintiff filed a Motion to Administratively Re-open the File and Leave to Supplement Plaintiff's Motion for Summary Judgment as to Count One. (Dkt. 86) In support of this motion, Plaintiff attached an affidavit of Pamela Perera. (Dkt. 86-2)

By order of February 7, 2005, the court granted Plaintiff's Motion to Re-open this case and to supplement the cross motions for summary judgment. (Dkt. 88) Thereafter, both parties filed supplemental briefs in support of their motions for summary judgment. (Dkts. 93 and 94). Plaintiff and Defendant also filed responses in opposition to the motions for summary judgment. (Dkts. 95 and 98)

3

**Findings of Fact**

The facts of this case were set out in detail in a prior Report and Recommendation (Dkt. 79) and are summarized in the following manner for the purpose of these motions.[2] Additional facts relevant to the receipt of workers' compensation benefits by Ms. Perera have been filed since entry of the prior Report and Recommendation and they are included as well.

Mitchell Kenneth Perera was employed by Estes Express Lines Corporation ("Estes") when, on April 11, 1997, during the course of his employment, he was crushed to death by an unoccupied idling tractor. As a result of his death, his wife, Pamela Perera ("Mrs. Perera), as personal representative of Mitchell Kenneth Perera's estate("Estate"), filed suit in Hillsborough County Circuit Court against Estes and certain of its employees (the "underlying lawsuit").

The Estate subsequently filed an amended complaint in the state action to state a wrongful death claim against Estes for "intentional acts designed to result in injury or death or conduct substantially certain to result in injury or death." Thereafter, the Estate filed a second amended complaint and added claims for punitive damages.

At the time of Mitchell Perera's death, Estes was insured with

---

[2] During the oral argument on these motions, both parties agreed that there are no material facts in dispute and that resolution of the instant summary judgment motions will dispose of the case.

4

an insurance program which required Estes to provide its own defense for the claims in the underlying lawsuit. (Dkt. 37 at 2) Estes was also insured by Defendant United States Fidelity and Guaranty Company ("USF&G") for Excess Workers Compensation and Employers Liability with limits of $1 million and a self insured retention of $350,000. The USF&G policy provided Estes with excess employers liability insurance for "bodily injury" (including resulting death) by accident arising out of and in the course of the injured employee's employment by the insured." (Dkt. 36, Exh. 3) The USF&G policy excluded from coverage "punitive or exemplary damages" and "bodily injury intentionally caused or aggravated by you." (Id.)

After Mitchell Perera's death, Mrs. Perera received death benefits payments from Estes' insurance carrier, USF&G. (Dkt. 86-2 at 1) The insurance company initiated contact with Mrs. Perera by telephone regarding the death benefit payments. (Dkt. 86-2 at 2; Dkt. 50, Perera Deposition at 25-27) Mrs. Perera did not file a claim for workers' compensation benefits or retain a lawyer to file such a claim. (Id.) Further, Mrs. Perera did not attend any depositions, hearings, or proceedings related to the receipt of these benefits. (Dkt. 86-2 at 2) No probate court approved the payment of, or the apportionment of, the death benefit payments to Mitchell Perera's minor children. (Id.) In addition, no guardian ad litem was appointed in a workers' compensation proceeding for the purpose of protecting the interests of Mitchell Perera's minor children. (Id.)

Moreover, the insurance company made the decision as to the

amounts of the checks and the designations of the payee. (Id.) Beginning on July 12, 1997, the insurance company sent death benefit payments to Mrs. Perera, as legal guardian and parent of Mitchell Perera's children, and to Mitchel Perera's dependent children. (Id.)  The insurance company sent checks in the amount of $662.70 every two weeks.  (Dkt. 82-2 at 2; Dkt. 50, Perera Deposition at 25)  No portion of the death benefit payments was paid to Mrs. Perera individually. (Id.)  After Mrs. Perera filed the underlying lawsuit, the insurance company continued to send death benefit payments to Mrs. Perera.  (Id.)

In September 2001, Plaintiff, individually and as the personal representative of the Estate, settled with Estes and Estes' individually named employees for ten million dollars ($10,000,000.00); the liability of defendants was joint and several. (Dkt. 39, Exh. A)  The Stipulation to Settle provided in pertinent part that:

> Estes and Estes' individually named employees shall, within 25 days from the date of the Court order approving the settlement, pay to Plaintiff Five Million ($5,000,000.00) Dollars and provide a written waiver of the workers' compensation lien.

(Dkt. 36, Exh. 11)

Prior to the settlement of the case, Plaintiff's counsel in the underlying action, Mac A. Greco ("Greco"), wrote to Defendant's counsel as follows: "This is a supplement to my letter to you of August 10th confirming our understanding.  I overlooked mentioning waiver of the workers' compensation lien in item (b) and this will

6

serve to confirm that aspect of resolving this case." (Dkt. 98, Exh. A) After the underlying suit was settled, the insurance company continued to send death benefit payments to Mrs. Perera. (Dkt. 86-2 at 2) From July 12, 1997 through February 2003, the insurance company provided Mrs. Perera death benefit payments of $662.70 every two weeks. (Dkt. 86-2 at 1-2; Dkt. 50, Perera Deposition at 25)

## II. DISCUSSION

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating to the court that it has met this standard. 477 U.S. at 323. Under Rule 56(e), Fed. R. Civ. P., once the movant has met this burden, the nonmoving party must identify specific facts that raise a genuine issue for trial. Id. at 324.

The court may not decide a genuine factual dispute in ruling on a motion for summary judgment, but rather must decide if material factual issues are present. Fernandez v. Bankers National Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990)(citations omitted). The court must judge all evidence in the light most favorable to Plaintiff as the nonmoving party, and all justifiable inferences must be drawn in the Plaintiff's favor. Id. However, the evidence must also be viewed within the scope of the evidentiary burden of

the respective parties under the substantive law of the case. Fernandez, 906 F.2d at 564, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If, under this standard, the evidence can be considered such that a reasonable jury could find for the plaintiff, summary judgment is inappropriate.  Fernandez, 906 F.2d at 564, citing Celotex, 477 U.S. at 324.

Relying on the holding of Travelers v. PCR, Inc., 889 So. 2d 779 (Fla. 2004), Plaintiff first asserts she is entitled to summary judgment as to Defendant's affirmative defense that the intentional injury exclusion clause in the employer's insurance policy defeats coverage liability.  Second, Plaintiff contends that Plaintiff's acceptance of death benefits payments did not constitute an election of remedies that estops Plaintiff from recovering on her tort claim. (Dkt. 93 at 3)  Therefore, Plaintiff asserts that she is entitled to summary judgment on Defendant's affirmative defense of workers' compensation exclusivity.

Defendant did not file an opposition to Plaintiff's motion for summary judgment on the intentional injury exclusion issue. (Dkt. 94)  Instead, Defendant seeks summary judgment on Defendant's affirmative defense of workers' compensation exclusivity.[3] (Dkt. 94

---

[3] Plaintiff contends that Defendant's affirmative defense of workers' compensation exclusivity is more appropriately characterized as an election of remedies defense. (Dkt. 93 at 6) Whether the affirmative defense is referred to as workers' compensation exclusivity or an election of remedies defense, both parties agree that Defendant is seeking summary judgment based on the argument that Plaintiff's acceptance of workers' compensation benefits precludes her recovery in tort. (Dkt. 93 at 6-7; Dkt. 94 at 3-5) For purposes of these motions, the undersigned will refer

8

at 1)  Specifically, Defendant argues that Plaintiff's negotiation of a waiver of the workers' compensation lien in the Stipulation to Settle demonstrates a conscious decision to elect workers' compensation benefits.  Thus, Defendant argues Plaintiff's election to receive workers' compensation benefits precludes recovery on her tort claim.

    A.   Defendant's Affirmative Defense That the Intentional Injury Exclusion Precludes Coverage

Under Florida workers' compensation law, an injured employee is not barred from suing his employer in tort if the employee can demonstrate that his injury was the result of an intentional tort committed against him by his employer.  Eller v. Shova, 630 So.2d 537, 539 (Fla. 1993).  In Turner v. PCR, Inc.,754 So.2d 683, 689 (Fla. 2000), the Florida Supreme Court held that the intentional-tort exception was implicit in the bargain struck by the Workers' Compensation Law.  The court further held that an injured employee could satisfy the intentional-tort exception not only by demonstrating that his employer actually intended to injury him, but also by showing that his injury was caused by employer conduct that was objectively substantially certain to cause injury.  Id. at 691.

In light of the uncertainty regarding how Florida law would interpret the intentional-tort exception in an insurance policy with respect to claims against employers for injuries "substantially certain" to occur, the Eleventh Circuit certified two questions to

---

to Defendant's affirmative defense as an election of remedies argument.

9

the Florida Supreme Court concerning the interpretation of the intentional injury exclusion provision. Travelers, 326 F.3d at 1194.[4]  The parties agreed that the decision in Travelers is dispositive of Defendant's affirmative defense on the intentional injury exclusion clause. (Dkt. 102)

In Travelers Indemnity Co. v. PCR Inc., 889 So.2d 779, 781 (Fla. 2004), the Florida Supreme Court held:

> whether an employer's liability insurance policy that provides coverage for liability arising from work-related accidental injuries, but excludes from coverage liability arising from injuries intentionally caused by the employer, provides coverage for a tort claim brought under the objectively-substantially-certain prong of the Workers' Compensation Law's intentional-tort exception.  We answer this question in the affirmative.  Furthermore, we hold that such coverage does not offend, and is not prohibited by, public policy.

In sum, the Florida Supreme Court concluded that an insurance policy with an intentional injury exclusion provision covers against claims brought under the "objectively-substantially-certain standard, where the injured employee does not allege that the employer actually intended to cause injury." Id. at 785.

Analogous to the facts in Travelers, Defendant's insurance policy contains an intentional injury exclusion provision. (Dkt. 39 at 3)  Likewise, in the underlying lawsuit, Plaintiff did not allege

---

[4] The Eleventh Circuit certified the following questions: (1) Does Florida insurance law require a reading of specific intent into an insurance clause excepting from liability coverage "bodily injury intentionally caused or aggravated" by the insured; and (2) Is PCR (the insured) entitled to liability coverage based on the language of this policy agreement read in light of Florida's law of interpreting insurance policies?  Travelers, 326 F.3d at 1194.

10

that the Estes or Estes' individual employees actually intended to cause Mitchell Perera's death.  (Dkt. 39 at 2)  Rather, Plaintiff alleged that intentional acts were substantially certain to result in injury or death.  (Id.)  Thus, following the holding in Travelers, the intentional injury exclusion provision of Defendant's insurance policy does not preclude coverage of Plaintiff's alleged harm.  Accordingly, Plaintiff is entitled to summary judgment on Defendant's affirmative defense of intentional injury exclusion.

    B.   Defendant's Affirmative Defense of Election Of Remedies

Plaintiff argues that her passive acceptance of workers' compensation benefits does not preclude her from obtaining a recovery in tort against Defendant.  Plaintiff contends that she never made a conscious decision to pursue a workers' compensation claim to a conclusion on the merits.  Moreover, Plaintiff asserts that, even if the court should find that Plaintiff made a conscious intent to elect workers' compensation benefits and waive her tort claim, the election of remedies defense does not affect the claims of Plaintiff's minor children.

Defendant contends that Plaintiff unequivocally demonstrated her conscious choice to elect workers' compensation benefits as her remedy when she negotiated and secured a waiver of workers' compensation lien as set forth in the Stipulation to Settle.[5]  In

---

[5] In arguing this affirmative defense, Defendant cites to Fla. Stat. ch. 440.11(1)(2005).  (Dkt. 30 at 7).  The statute provides in pertinent part that the liability of an employer " . . .shall be

11

support of its position, Defendant cites to <u>Martin Electronics, Inc. v. Jones</u>, 877 So.2d 765 (Fla. 1st DCA 2004). According to Defendant, because Plaintiff executed the Stipulation to Settle individually and on behalf of the Estate, the election of remedies defense is applicable to the claims of Plaintiff's children.

The doctrine of election of remedies is an application of the doctrine of estoppel. <u>Williams v. Robineau</u>, 168 So. 644, 646 (Fla. 1936). An election of remedies "is a choice shown by an overt act between two inconsistent rights, either of which may be asserted at the will of the chooser alone." <u>Id</u>. In <u>Robineau</u>, the Florida Supreme Court adopted "the more liberal rule" under which the mere bringing of an action or choosing of a remedy is not deemed an election of remedies unless the remedies chosen is pursued to full satisfaction. <u>Id.</u> As such, "the mere bringing of an action or suit which is dismissed before a judgment, where no advantage has been gained or detriment occasioned, does not constitute an election of remedies."

In <u>Lowery v. Logan</u>, 650 So.2d 653 (1st DCA 1995), the employer filed a notice of injury and the employer's insurance carrier voluntarily paid plaintiff's disability benefits without the plaintiff ever filing a claim for benefits. <u>Id.</u> at 654. Although plaintiff signed wage-loss forms to continue to receive benefits,

---

exclusive and in place of all other liability, including vicarious liability, of such employer . . . ." Fla. Stat. ch. 440.11(1)(2005).

12

the court held that he was not precluded from filing a tort action. Id. at 657-58. The court found that to constitute an election of remedies, the workers' compensation remedy must be pursued to a determination or conclusion on the merits. Id. at 657. Importantly, the mere acceptance by a claimant of benefits is not enough to constitute an election. Id. "There must be evidence of a conscious intent by the claimant to elect the compensation remedy and to waive his other rights." Id.

Following the holding in Lowry, Plaintiff's acceptance of benefits is not sufficient evidence to show a deliberate decision to elect a workers' compensation remedy. In order for Plaintiff's actions to constitute an election of remedies which bar her tort action, Plaintiff must exhibit a conscious intent to pursue workers' compensation benefits and to forfeit her other rights. Wheeled Coach Industries, Inc. v. Annulis, 852 So.2d 430, 432 (Fla. 5th DCA 2003)(petitioning to change the schedule of benefits does not evince a conscious intent to elect workers' compensation benefits or waive a right to recover a tort claim).

The case of Hernandez v. United Contractors, 766 So.2d 1249 (Fla. 3d DCA 2000) is instructive. In Hernandez, plaintiff filed a wrongful death action on behalf of herself, the estate and her minor children. Id. at 1251. During the pendency of the tort action, plaintiff filed a petition seeking workers' compensation death benefits. Id. At mediation of the workers' compensation claim, the parties entered into a stipulation to discharge liability

13

in exchange for a lump sum payment of $10,000 in death benefits. Id. The court held that plaintiff's settlement of the workers' compensation claim provided that no admissions were being made by either party and that the employer reserved all defenses. Id. Because the workers' compensation remedy was not pursued to a determination on the merits, there was no election of remedies. Id. at 1252. Instead, the court held that the insurance carrier decided to "simply opted to 'buy' its way out of the workers' compensation litigation by expediently (and cheaply) resolving what amounted to little more than a nuisance claim." Id. at 1253.

In this case, analogous to the facts in Hernandez, Plaintiff did not elect to receive workers' compensation benefits in lieu of a tort recovery. Plaintiff's negotiation of a waiver of workers' compensation lien is not adequate evidence of Plaintiff's deliberate decision to pursue a workers' compensation remedy and to forgo her tort claim. As part of Plaintiff's ten million dollar settlement of her tort claim, the parties agreed that Plaintiff would not be required to repay the approximately $100,000.00 in death benefits she received from the insurance carrier. Moreover, within 25 days of the approval date of the settlement, Estes was required to pay Plaintiff five million dollars.

Defendant's argument that the settlement of Plaintiff's tort claim is both a settlement of her tort claim and a waiver of her tort action is unpersuasive. Defendant fails to point to any document or testimony which demonstrates Plaintiff's conscious

14

intent to waive her right to receive five million dollars in exchange for $100,000.00 in workers' compensation benefits. There is no indication in Greco's letter to Defendant's counsel that the waiver of the lien is tantamount to Plaintiff's knowing decision to forgo her five million dollar tort recovery in favor of the death benefits. The letter merely states that the securing of the waiver of the lien "will serve to confirm that aspect of resolving this case."

Furthermore, Defendant's reliance on Martin Electronics is misplaced. In Martin Electronics, after plaintiff was injured in an explosion, defendant's insurance carrier voluntarily provided workers' compensation benefits to plaintiff in excess of one million dollars. 877 So.2d at 767. When a dispute concerning the hourly rate of attendant care arose, plaintiff's spouse filed a petition for benefits with the Office of the Judges of Compensation Claims. Id. Prior to the hearing on the petition, the parties filed a stipulation of facts which provided that plaintiff sustained his injury by accident. Id. In an order granting plaintiff's petition for benefits, the compensation judge approved and adopted the parties' stipulation of facts and awarded plaintiff's wife additional monies for attendant care.

The court concluded that plaintiff demonstrated a conscious intent to choose workers' compensation benefits over a tort claim by: (1) filing a petition for additional attendant care benefits, (2) litigating before the judge of compensation claims on the theory

15

that a covered industrial accident occurred, and (3) obtaining an order predicated on the finding that plaintiff sustained an injury by accident.  Id. at 768.

Unlike the party in Martin Electronics, Plaintiff did not litigated her entitlement to workers' compensation benefits. Plaintiff did not file for these benefits or retain an attorney to file her claim.  There is no dispute that the insurance company initiated contact with Plaintiff regarding the benefits.  Indeed, the decision as to the amounts of the checks and the designation of the payee were made by the insurance carrier.  Additionally, contrary to the facts in Martin Electronics, Plaintiff did not attend any hearing or proceeding relating to the grant of benefits. Nor did Plaintiff ever acknowledge that her husband's death was an accident.  In sum, Plaintiff never pursued a workers' compensation claim to a final determination on the merits.  Therefore, because Plaintiff's acceptance of death benefits did not constitute an election of remedies, Plaintiff is not precluded from recovering under her tort claim.[6]

---

[6] Although the resolution of the election of remedies defense resolves the parties' cross motions, even if Plaintiff's argument had failed as to herself, it is clear that the minor children did not elect the worker's compensation remedy.  No probate court and no guardian approved the payment of death benefits to the minor children.  No guardian ad litem was appointed to review the payment of the death benefits.  Under Florida law, when a settlement of any claim over $5,000.000 by a guardian is proposed, a  trial court has the duty to determine that the settlement is in the best interest of the child. Fla. Stat. ch. 744.387(1) and (2)(2005).  Without a determination by a trial court that settling the workers' compensation claim was in the children's best interest, there could

16

**III. CONCLUSION**

It is therefore **RECOMMENDED** that:

(1) **Plaintiff's Supplemental Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment** (Dkt. 93) be **GRANTED**;

(2) **Defendant's Supplement to Defendant's Motion for Summary Judgment** (Dkt. 94) be **DENIED**.

ELIZABETH A JENKINS
United States Magistrate Judge

Dated: July 11, 2005
Case No. 8:02-CV-688-T-23EAJ

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. 636 (b)(1).

---

be no election of the workers' compensation remedy by Plaintiff's minor children. See Hernandez, 766 So.2d at 1253-54.