UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAMELA PERERA,

    Plaintiff,

v.   CASE NO. 8:02-CV-688-T-EAJ

UNITED STATES FIDELITY AND
GUARANTY CORPORATION,

    Defendant.
_____/

ORDER

THIS CAUSE comes before the court on a limited remand from the United States Court of Appeals for the Eleventh Circuit (Dkt. 129).[1] Following a status conference, this court held oral argument on the parties' cross-motions for summary judgment issue as to whether Defendant's conduct amounts to bad faith. For the reasons set forth below, summary judgment is denied.

In Florida, bad faith, or "whether an insurer has acted fairly and honestly toward its insured and with due regard for [the insured's] interests" is evaluated under a "totality of the circumstances" standard. State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 63-63 (Fla. 1995) (internal quotation marks and citations omitted). The following factors are relevant to a bad faith determination: "(1) whether the insurer was able to obtain a reservation of the right to deny coverage if a defense were provided; (2) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue; (4) the

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 136).

insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and (5) efforts made by the insurer to settle the liability claim in the face of the coverage dispute." Id. at 63. Bad faith is evaluated on a case-by-case basis and ordinarily is a jury question. Berges v. Infinity Ins. Co., 896 So. 2d 665, 680 (Fla. 2004) (citations omitted). Material to determining bad faith is whether the insurer acted with reasonable diligence and ordinary care with regard to the insured's interest. Id.

The parties concede that the first factor is inapplicable because the USF&G policy specifically provided that the insured maintain its own defense. Genuine issues of material fact exist as to the remaining factors. The parties present conflicting evidence on the weight of the legal authority that existed on the coverage issue. Defendant argues that at the time of the coverage dispute, there was no legal authority in Florida that gave rise to a duty of coverage under the USF&G policy. At the least, Defendant maintains, whether coverage existed was debatable under Florida law.

Plaintiff offers evidence, however, from which a reasonable fact-finder could infer that the weight of legal authority on the coverage issue favored Plaintiff. A June 27, 2001, twelve-page letter from Mark Hicks ("Hicks"), counsel for Federal Insurance Company, to William Lambros ("Lambros"), an authorized representative of USF&G through its alternative risk insurer Discover Re, thoroughly analyzed legal authority relevant to the coverage issue and advised that USF&G's position regarding the coverage issue was "incorrect." (Blackman Dep. Ex. 7, Feb. 26, 2003) Concluding the letter, Hicks again reiterated to Lambros that USF&G's position that the policy's exclusion precluded coverage was "without merit." (Id.) Further, a June 7, 2001 letter from David Etheridge, an attorney representing the insured in the underlying lawsuit, to Lambros, also analyzed the relevant case law to the coverage dispute and advised that the rigidity of USF&G's position on

the coverage issue was "both legally untenable and practically realistic." (Helmick Dep. Ex. 2, Feb. 26, 2003) John Witt, a senior vice president at Aon Risk Services, wrote in a April 17, 2001 email to Robert Izlar, also employed by Aon, that the law surrounding the coverage issue was a "gray area" and not "black and white" as USF&G maintained. (John Witt Dep. Ex. 27, Feb. 10, 2003) The contradictory evidence presents a genuine issue of material fact on whether the weight of legal authority on the coverage issue favored Defendant.

A factual question also remains about the extent of Defendant's efforts to settle the liability claim in the face of the coverage dispute. Although Defendant argues that it wanted to settle the case, participated in settlement negotiations, and even offered $100,000 toward the settlement of the case (see, e.g., Blackman Dep. Ex. 13; Lambros Dep. 43:16-44:2, Feb. 7, 2003), Plaintiff offers contradictory evidence that USF&G refused to make any contribution to a settlement offer. For example, Etheridge's June 7, 2001 letter informed Lambros of the latest settlement offer at mediation and stated that despite continuing efforts, "USF&G refused to make any contribution." (Helmick Dep. Ex. 2) Furthermore, both parties offer conflicting deposition testimony on whether USF&G actually made a concrete monetary offer to settle the case.

In addition, the parties submit conflicting evidence on USF&G's diligence and thoroughness in investigating the facts specifically pertinent to the coverage issue. Defendant maintains that Lambros continuously attempted to collect information and be involved in the case even though USF&G maintained that it had no coverage liability. Plaintiff responds that as early as June 1, 1998, USF&G denied coverage through a letter from Meg Felice, Assistant Vice President of Discover Re, to Witt. (Witt Dep. Ex. 3) The letter outlines USF&G's position of no coverage under the policy and states that Discover Re "would like to be kept fully apprised of developments as they occur in this

matter." (Id.) The letter also advised that "to the extent that [the allegations in the complaint] were ultimately proven to be true, there would be no coverage available under the USF&G policy." (Id.) Plaintiff argues that this letter evidences USF&G's determined position as of June 1, 1998 that no coverage existed and that USF&G subsequently failed to thoroughly investigate the facts pertinent to coverage. Any inference that can be drawn from the evidence is therefore the province of the jury.

Finally, the disputed evidence attributed to the foregoing factors is also material to whether USF&G took measures to resolve the dispute promptly and in such a way as to limit any potential prejudice to its insured. Defendant has always maintained that because the theory of the underlying suit was predicated "upon intentional acts designed to result in injury or death or conduct which was substantially certain to result in injury or death. . . ." (Amended Compl. ¶ 13), no coverage existed under the USF&G policy. Because no coverage existed, Defendant argues, USF&G had no need to file a declaratory action to resolve the coverage issue. However, Plaintiff has presented evidence, as discussed above, that the weight of legal authority was not squarely in favor of Defendant on the coverage issue. Further, Plaintiff points out that Richard Byrne ("Byrne"), an attorney for USF&G, testified that in July 2001, it was his opinion that USF&G should "await the outcome of a trial before making a determination whether . . . they would deny coverage." (Byrne Dep. 49: 6-11, Feb. 7, 2003) Lambros also testified that one reason why Discover Re, USF&G's alternative risk insurer, did not file a declaratory action on the coverage issue was because a jury had not made any finding of fact as to liability. (Lambros Dep. 40:24-43:14) A fact-finder could reasonably infer from this evidence that USF&G failed to act in a manner that would promptly resolve the dispute and limit potential prejudice to its insured.

On summary judgment, "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  For the reasons stated, the record evidence regarding Defendant's conduct regarding the coverage dispute presents genuine issues of material fact precluding summary judgment.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1) The parties' cross-motions for summary judgment (Dkts. 34, 37) on the bad faith claim are **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on this 31st day of August, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge